A05A0235. JOHNSON v. ALLEN et al.
A05A0236. ATLAS COLD STORAGE USA, INC. et al. v. ALLEN et al.
(613 SE2d 657)

BLACKBURN, Presiding Judge.

These related cases regard the alleged improper video surveillance of a bathroom stall in the women's restroom located at Atlas Cold Storage USA, Inc. from approximately 1998 to early 2001.[1] Over 20 women who used the restroom during this period subsequently filed suit against both Atlas and Timothy L. Johnson, Sr., Atlas's manager of operations, contending that they had been inappropriately monitored by Johnson while they were in the Atlas women's restroom.[2]

---

[1] Atlas acquired the cold storage facility from Georgia Freezer in 2000, and Atlas does not contest that it may be held responsible for liability in this case set in play by its predecessor in interest. For ease of understanding, Georgia Freezer and Atlas are separately and collectively referred to as "Atlas" herein.

[2] Included in the list of plaintiffs are customers, employees, and relatives of employees.

In Case No. A05A0235, the plaintiffs sued Johnson, in his individual capacity, for invasion of privacy, intentional infliction of emotional distress, and fraud and deceit. In Case No. A05A0236, the plaintiffs, mainly pursuant to the doctrine of respondeat superior, sued Atlas for invasion of privacy, intentional infliction of emotional distress, premises liability, fraud and deceit, and punitive damages.

After hearing arguments in both cases, the trial court denied both the motion for summary judgment brought by Johnson in Case No. A05A0235 and the separate motion brought by Atlas in Case No. A05A0236. Both Johnson and Atlas now appeal the trial court's rulings, and due to their close relation, we consider both cases together in this consolidated appeal.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[3]

Viewed in this light, the record shows that, from 1997 until March 2001, Johnson acted as Atlas's manager of operations. Johnson's personal office and his attached restroom shared an adjoining wall with the women's restroom. In 1999, Atlas installed a video surveillance system in response to rumors that drugs were being sold on the premises, specifically in the women's restroom. During his tenure, Johnson was in sole control of the video surveillance used within the company, although the general security system was not in use for this entire time. Atlas admits that Johnson had been authorized to operate the video system to prevent theft and drug use within the facility. And, within the time period in question, Johnson made several comments to different employees regarding the extent of his monitoring capabilities. For example, Johnson told employees, "There's not going to be any place in this facility that I'm not going to be able to see you." He further admonished, "There's nowhere in this building or on these premises that I can't watch you and know what you're doing." In addition, Johnson said, "I'm going to watch you everywhere — everywhere you go, I'm going to be able to watch you." Also, Johnson stated, "There's cameras places where y'all don't know about."

---

[3] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Tina Carter deposed that, at one time, Michelle Massey, an Atlas employee, confronted Johnson and told him that she believed that there was a camera hidden behind a ceiling tile in the bathroom. Massey's suspicion had been aroused because she had noticed that a particular tile in the bathroom ceiling had been moved back and forth from its proper position to a position in which it was pushed slightly back, thereby creating an opening to the space above. Carter further deposed that when Massey described her suspicion that there was a camera above the bathroom stall to Johnson, he replied: "ha, ha, ha, there is." Johnson then entered the women's restroom and, using a stepladder replaced the tile without checking for a camera.

In addition, Darrell Moore, an Atlas maintenance man, testified that, on two separate occasions in 1999, he saw a video monitor in the ceiling of Johnson's own restroom. When Moore asked Johnson about the monitor, Johnson told him that it was none of his business.

In the fall of 2001, after Johnson's departure from the company, Atlas decided that, due to security concerns, it should reactivate its camera surveillance system which had been installed in 1999 but was no longer in use at that time. While the system was being reactivated, a technician discovered a video camera, monitor, videocassette recorder, and modem above the women's restroom. At the time that it was discovered, the camera was not hooked up to the general security system, and, rather than being an indoor camera, the camera in question was one designed for outdoor use.

In response to the discovery of the camera, Atlas issued a memorandum to its employees stating that a serious breach of security probably occurred in the building. In addition, it offered counseling to any employees who felt that they needed it in light of this security breach.

*Case No. A05A0235*

1. Johnson contends that the trial court erred by denying his motion for summary judgment regarding the plaintiffs' claims for invasion of privacy.

> Under Georgia case law, the concept of invasion of privacy encompasses four loosely related but distinct torts, as follows: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation for the defendant's advantage of the plaintiff's name and likeness.

*Sun v. Langston.*[4] This case centers solely around the plaintiffs' claims that Johnson inappropriately intruded upon their seclusion while they were in the restroom.

In order to recover for intrusion upon seclusion, it is necessary to show "a physical intrusion analogous to a trespass." (Punctuation omitted.) *Davis v. Emmis Publishing Corp.*[5] "Like assault and battery, this tort is analyzed under an objective standard. The intrusion aspect of this type of invasion of privacy involves a prying or intrusion, which would be offensive or objectionable to a reasonable person." (Punctuation omitted.) *Everett v. Goodloe.*[6]

An individual certainly retains a right of privacy regarding their use of a restroom, an immensely intimate act. See *Wylie v. State.*[7]

> However, the law recognizes that the right of privacy is not absolute. . . . [I]t . . . must be kept within its proper limits, and in its exercise must be made to accord with the rights of those who have other liberties, as well as the rights of any person who may be properly interested in the matters which are claimed to be of purely private concern.

(Punctuation and emphasis omitted.) *Elmore v. Atlantic Zayre.*[8] Thus, "a stall in a public restroom is not a private place when it is used for other than its intended purpose." *In re C. P.*[9] (no expectation of privacy in high school bathroom stall being used for sexual activity). See also *Elmore,* supra (no invasion of privacy when store bathroom stall being used for sodomy); *Wylie,* supra (no invasion of privacy when two persons occupying single stall are facing each other).

Based on the facts of this case, however, the alleged continual monitoring of the women's restroom would constitute an invasion of privacy, irrespective of rumors of drug use and sales. Unlike those cases cited directly above, the alleged monitoring in this case was not conducted as short-term surveillance in response to specific information of illegal activity being performed within a restroom stall. To the contrary, viewed in the light most favorable to the nonmovant, this case regards the continuous observation of private matters occurring in the women's restroom. And, as such observation would surely be offensive to the reasonable person, the trial court did not err by

---

[4] *Sun v. Langston,* 170 Ga. App. 60, 61 (2) (316 SE2d 172) (1984).

[5] *Davis v. Emmis Publishing Corp.,* 244 Ga. App. 795, 797 (2) (536 SE2d 809) (2000).

[6] *Everett v. Goodloe,* 268 Ga. App. 536, 544 (2) (b) (602 SE2d 284) (2004).

[7] *Wylie v. State,* 164 Ga. App. 174 (296 SE2d 743) (1982).

[8] *Elmore v. Atlantic Zayre,* 178 Ga. App. 25-26 (341 SE2d 905) (1986).

[9] *In re C. P.,* 274 Ga. 599, 600 (555 SE2d 426) (2001).

denying Johnson's motion for summary judgment regarding the plaintiffs' claims for invasion of privacy.

Nonetheless, Johnson argues that there was insufficient evidence to show either that the camera in question was ever operational or that he had any control over the camera. Our standard of review, however, requires this Court to view the evidence in the light most favorable to the plaintiffs, and the plaintiffs' claims survive summary judgment if there is sufficient evidence to raise a reasonable inference that Johnson used the camera to improperly monitor the women's restroom.

Viewed under the proper standard of review, the record shows that, on several different occasions, Johnson bragged to a number of employees that he could watch them at any place in the facility, including places that they would not suspect. Indeed, he admitted to one person that a camera had been installed in the women's restroom. In addition, a video monitor was seen in Johnson's bathroom adjoining the women's restroom, and Johnson had an opportunity to investigate the placement of the camera but suspiciously failed to do so. All of this evidence raises at least a reasonable inference both that Johnson may have known about the camera and that it was operational.

Accordingly, this enumeration lacks merit.

2. Johnson contends that the trial court erred by denying his motion for summary judgment regarding the plaintiffs' claims that they suffered from the intentional infliction of emotional distress due to the breach of their privacy.

> The four elements which must be proved in order to sustain a claim of intentional infliction of emotional distress are: (1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe. . . . [I]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Northside Hosp. v. Ruotanen.*[10]
Furthermore,

> alleged tasteless and rude social conduct is not actionable and there is no occasion for the law to intervene in every case where someone's feelings are hurt. Only where the distress inflicted is so severe that no reasonable person could be expected to endure it does the law intervene. Whether a claim rises to a sufficient level of outrageousness or egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law for the court.

(Punctuation and footnotes omitted.) *Everett*, supra at 545 (2) (c).

Given the highly invasive nature of the alleged tort in this case, the extremely private nature of the act being spied upon, and viewing the evidence in the light most favorable to the nonmovant, we cannot say that the trial court erred by denying Johnson's motion for summary judgment in this regard. And, Johnson's claim that there is no evidence that the peeping was directed toward any specific female victim does not change this result under the facts of this case. Based on the evidence and the specific type of illicit activity alleged, there is a reasonable inference that Johnson installed the video equipment to peep on the select class of females who used the women's restroom in Atlas's facility. As such, his activity was not directed at the public at large, but to a discrete subclass including individuals known by Johnson. For this reason, cases such as *Ford v. Whipple*[11] (defendant's act of running red light not directed at occupant of another vehicle she struck) are not applicable to this matter.

Accordingly, this enumeration lacks merit.

3. Johnson contends that the trial court erred in denying his motion for summary judgment regarding the plaintiffs' claims that he committed fraud and deceit by presenting the women's restroom to them as being safe and secure. On this matter, we must agree.

To maintain an action for fraud, the following elements must be shown: (1) a false representation by defendant, (2) scienter, (3) intention to induce plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff. And, summary judgment is appropriate if any one of the essential elements of the claim is missing. *Johnson v. Rodier.*[12]

---

[10] *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 435 (541 SE2d 66) (2000).

[11] *Ford v. Whipple*, 225 Ga. App. 276, 278 (483 SE2d 591) (1997).

[12] *Johnson v. Rodier*, 242 Ga. App. 496, 498 (2) (529 SE2d 442) (2000).

In this case, the plaintiffs have pointed to no explicit representations made by either Johnson or Atlas that the women's restroom would be secure from all invasions of privacy such as the one that allegedly occurred in this case. As such, the plaintiffs' claims for fraud and deceit must fail.

### Case No. A05A0236

In this related case, Atlas appeals the trial court's denial of its motion for summary judgment regarding the plaintiffs' claims for invasion of privacy, intentional infliction of emotional distress, premises liability, fraud and deceit, and punitive damages.

4. Atlas contends that the trial court erred by denying its motion for summary judgment regarding the plaintiffs' claim for invasion of privacy. Specifically, Atlas contends that the plaintiffs have failed to show that Atlas can be held responsible for Johnson's acts pursuant to the doctrine of respondeat superior. We disagree.

> In Georgia, employers or principals may be vicariously liable for punitive damages arising from the acts or omissions of their employees or agents if such tortious conduct is committed in the course of the employer's or principal's business, within the scope of the servant's or agent's employment, and is sufficient to authorize a recovery of punitive damages under OCGA § 51-12-5.1.

*Fowler v. Smith.*[13]

In this case, clear questions of fact remain whether Atlas installed a video surveillance system in response to rumored drug use *in the women's restroom.* In fact, in its brief, Atlas states: "In the fall of 2001, following the September 11 tragedy and other security concerns, Atlas decided to reactivate the camera surveillance system, which had previously been installed to counter drug and theft problems but was not then being used." In addition, Atlas admits that it placed Johnson in charge of that video surveillance system and asked him to monitor the activity of employees. Accordingly, a reasonable inference arises that Johnson's surveillance of the women's restroom was within the scope of his employment, and the trial court properly denied Atlas's motion for summary judgment in this regard.

Nonetheless, Atlas argues that it cannot be held responsible for Johnson's behavior, arguing that the surveillance was conducted for Johnson's personal gratification.

We have held that,

---

[13] *Fowler v. Smith,* 237 Ga. App. 841, 843 (2) (516 SE2d 845) (1999).

if a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from the act, the servant may be liable, but the master is not liable. In accordance with the foregoing principles, Georgia courts have consistently held that an employer cannot be held liable under respondeat superior for an employee's sexual misconduct when the alleged acts were not taken in furtherance of the employer's business and were outside the scope of employment.

(Punctuation and footnote omitted.) *Piedmont Hosp. v. Palladino.*[14] In this case, however, there is no evidence that Johnson acted solely for his personal sexual gratification in this case, as opposed to conducting an investigation of suspected criminal conduct for his employer. At best, his motivation remains an open question of fact for the jury. *Palladino*, therefore, is simply not applicable under the facts of this case. It is undisputed here that the surveillance system was put in, in part, to observe criminal conduct. There is no evidence of any criminal conduct having occurred in the women's restroom. Unlike in *In re C. P.*, supra, and *Elmore*, supra, the female victims here retained their expectation of privacy. See *Wylie*, supra.

5. Atlas contends that the trial court erred by denying its motion for summary judgment regarding the plaintiffs' claims for intentional infliction of emotional distress. Again, we disagree. As we have determined that a question of fact remains regarding whether Johnson was acting in the scope of his employment, a jury could determine that Atlas is responsible for Johnson's alleged actions in this case pursuant to respondeat superior. Therefore, Atlas is not entitled to summary judgment on this claim.

6. Atlas contends that the trial court erred by denying its motion for summary judgment regarding the plaintiffs' claims based on premises liability. We agree.

OCGA § 51-3-1 provides:

Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

Premises liability sounds in negligence. Whether Johnson acted for his own benefit or pursuant to his duties for his employer, the act

---

[14] *Piedmont Hosp. v. Palladino*, 276 Ga. 612, 614 (580 SE2d 215) (2003).

of installing and using video monitors was an intentional act. The plaintiffs' premises liability prayers for mental anguish against Atlas amount to claims for the negligent infliction of emotional distress, which does not conform to the facts herein.

It is undisputed that there has been no case decided in Georgia in which a private company has been held liable for premises liability regarding emotional (rather than physical) damages. We decline to so hold in this case.

A claim based on the negligent infliction of emotional distress requires a physical impact. "[T]he current Georgia impact rule has three elements: (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." *Lee v. State Farm Mut. Ins. Co.*[15] It is undisputed in this case that the plaintiffs suffered no physical impact, and, as such, they would have no basis to bring a claim for the negligent infliction of emotional distress.

7. Atlas also contends that the trial court erred by denying its motion for summary judgment regarding the plaintiffs' claims for fraud and deceit as did Johnson. For the same reasons set forth as to Johnson in Division 3, supra, we agree that the trial court so erred as to Atlas.

8. Finally, Atlas contends that the trial court erred by denying its motion for summary judgment regarding the plaintiffs' claim for punitive damages. In general, an employer's respondeat superior liability includes liability for punitive damages if the employee's wrongful conduct was sufficient to permit such damages. See *Sightler v. Transus, Inc.*[16] In this case, as discussed above, Atlas may have respondeat superior liability for Johnson's alleged actions. As such, the trial court properly denied Atlas's motion for summary judgment regarding this matter.

*Judgments affirmed in part and reversed in part. Miller and Bernes, JJ., concur.*

DECIDED MARCH 24, 2005 —
RECONSIDERATION DENIED APRIL 15, 2005 — ▉

---

[15] *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 586 (I) (533 SE2d 82) (2000).
[16] *Sightler v. Transus, Inc.*, 208 Ga. App. 173 (430 SE2d 81) (1993).

*Blasingame, Burch, Garrard, Bryant & Ashley, M. Steven Heath, Josh B. Wages, Fisher & Phillips, F. Kytle Frye III, Rhonda R. Wilcox,* for appellants.
*Orr & Orr, E. Wycliffe Orr, Sr., Spence Johnson,* for appellees.