Sara KOEPPEL, Appellant,

v.

Robert SPEIRS, Appellee.

No. 08–1927.

Supreme Court of Iowa.

Dec. 23, 2011.

John J. Rausch of Rausch Law Firm, P.C., Waterloo, for appellant.

Samuel C. Anderson and Kami L. Holmes of Swisher & Cohrt, P.L.C., Waterloo, for appellee.

CADY, Chief Justice.

In this appeal, we must decide whether surveillance equipment secretly installed in a bathroom can support a claim for invasion of privacy when the equipment could not be operated after it was discovered to produce identifiable images. The district court determined evidence of an actual, rather than attempted, intrusion was required and granted summary judgment for the defendant after concluding the evidence was insufficient to sustain the plaintiff's claim. The court of appeals reversed, finding the evidence of intrusion was sufficient to survive summary judgment. On our review, we affirm the decision of the court of appeals, reverse the decision of the district court, and remand for further proceedings.

## I. Background Facts and Proceedings.

Robert Speirs was an insurance agent for an insurance company. He operated his business from an office building in Waterloo. He employed Sara Koeppel and Deanna Miller to assist him in his business.

The office included a reception area occupied by Koeppel and Miller, an office occupied by Speirs, and a small unisex bathroom. The bathroom contained a sink, toilet, and black floor shelf. The shelf had a hollow rectangular base and was positioned between the sink and the toilet.

In October 2005, Speirs noticed Miller's work performance had deteriorated. He began to suspect she was engaged in conduct detrimental to the operation of his office. In response, Speirs decided to monitor Miller's activities at work using a hidden camera.

On November 26, 2005, Speirs purchased a security camera, monitor, video-cassette recorder (VCR), and video tape. The camera was powered by a nine-volt battery and functioned independently of the receiver and monitor. When the camera was switched on, it would send radio wave signals to the receiver corresponding to the images captured by the camera. The receiver, in turn, sent the images to the monitor for viewing. The receiver, monitor, and VCR were located in Speirs' office. The battery only had a lifespan of a few hours.

Speirs claimed that, on December 10, he installed the camera in the reception area of the office to monitor Miller's work station. As a result, he was able to observe the reception area from the monitor in his office. He had no difficulty observing Miller when the equipment was in operation. However, he did not observe any misconduct by Miller and removed the camera from the reception area after approximately ten days. He claimed he was never able to record the camera images with the VCR.

On December 26, Speirs claimed he found a hypodermic needle in the office parking lot near the spot Miller parked her car. As a result, he installed the camera inside the hollow base of the shelf in the bathroom. He claimed, however, the equipment did not operate after he placed the camera in the bathroom. Instead, he claimed the monitor in his office produced only static or, at other times, displayed a "no signal" message. After unsuccessfully working with the equipment to produce a picture on the monitor, Speirs claimed he unhooked the monitor and receiver and put them in his desk drawer. Nevertheless, he left the camera in the bathroom and claimed he intended to re-

move it before Koeppel and Miller arrived at work the following day.

The next day, Koeppel discovered the camera in the bathroom. She took photographs of the scene and reported her discovery to the police. The photographs showed the camera angle pointing towards the toilet in the bathroom.

The police investigation uncovered the monitor and receiver located in Speirs' office. The camera was found in the bathroom but was inoperable due to a dead battery. The investigating officers replaced the battery in the camera, assembled the equipment, and attempted to operate the monitoring system. They eventually observed a "snowy, grainy, foggy" image on the screen of either the legs or arms of the investigating officer who was inside the bathroom. This image appeared only briefly before the monitor displayed a "no signal" message.

Koeppel filed a claim for damages against Speirs and the insurance company. The petition alleged invasion of privacy and sexual harassment. Miller filed a separate action against Speirs and the insurance company based on the same claims. The district court eventually dismissed the insurance company as a defendant in the lawsuit because it found Speirs was an independent contractor rather than an employee. It also granted summary judgment for Speirs on the sexual harassment claim because Speirs, as an employer of less than four people, was not subject to liability under Iowa Code section 216.6 (2005).

Speirs also moved for summary judgment on the invasion-of-privacy claim. He claimed the camera did not constitute an intrusion as a matter of law because it did not actually allow him to view or record Koeppel and Miller. Koeppel claimed she produced sufficient evidence of an invasion because Speirs placed the camera in the bathroom with the intent to view her and the camera was operable. The facts to support and resist the summary judgment have been recited as the background facts of this appeal.

The district court granted Speirs' motion for summary judgment on the invasion-of-privacy claim. The court reasoned that, although Speirs intended to view Koeppel in the bathroom, the tort of invasion of privacy required proof the equipment had worked and Speirs had viewed the plaintiffs. It concluded the standard required an actual, as opposed to attempted, intrusion.

Koeppel appealed both summary judgment rulings. The court of appeals affirmed the district court's order granting summary judgment in favor of Speirs on the issue of sexual harassment, but reversed the ruling in favor of Speirs on the invasion-of-privacy claim. The court of appeals concluded the evidence indicating the camera was operational in the bathroom was sufficient to survive summary judgment on the issue of invasion of privacy. Speirs requested, and we granted, further review on the issue involving invasion of privacy.

## II. Standard of Review.

We review a district court's ruling on summary judgment for errors at law. Iowa R.App. P. 6.907. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* r. 1.981(3); *Kistler v. City of Perry*, 719 N.W.2d 804, 805 (Iowa 2006). We view the facts on the record in the light most favorable to the nonmoving party. *C & J Vantage Leasing Co. v. Outlook Farm Golf Club, LLC*, 784 N.W.2d 753, 756 (Iowa 2010).

### III. Analysis.

The case before us presents an issue of first impression pertaining to the quantum of proof necessary to establish an intrusion under the "unreasonable intrusion upon the seclusion of another" prong of the invasion-of-privacy tort. This issue necessarily requires us to develop a standard for the jury to apply in determining when electronic devices intrude into privacy. Courts of other jurisdictions have reached conflicting conclusions. Daniel P. O'Gorman, *Looking Out for Your Employees: Employers' Surreptitious Physical Surveillance of Employees and the Tort of Invasion of Privacy*, 85 Neb. L. Rev. 212, 228 (2006). The conflict originates with the fundamental nature of the tort. *Id.* Thus, we begin by reviewing the underlying policy of the cause of action.

■ **A. Invasion of Privacy.** In general, the American view of privacy "exemplifies the possessive and territorial view of privacy" by aligning tort policy with the right of the owner to dispose of privacy as the owner wishes. Lawrence E. Rothstein, *Privacy or Dignity?: Electronic Monitoring in the Workplace*, 19 N.Y. L. Sch. J. Int'l & Comp. L. 379, 381–82 (2000). Conduct that intrudes on privacy gives rise to liability because it can cause a reasonable person "mental suffering, shame, or humiliation" inconsistent with the general rules of civility and personal autonomy recognized in our society. Comment, *The Emerging Tort of Intrusion*, 55 Iowa L. Rev. 718, 719 (1970) [hereinafter Comment]; *see also* Pauline T. Kim, *Privacy Rights, Public Policy, and the Employment Relationship*, 57 Ohio St. L.J. 671, 691–92 (1996) ("The common law [violation for intrusion upon seclusion], however, is only concerned with the most serious of these territorial violations, those which threaten an individual's identity by withdrawing the deference normally afforded a

member of the community."). The importance of privacy has long been considered central to our western notions of freedom:

> [A] measure of personal isolation and personal control over the conditions of [privacy's] abandonment is of the very essence of personal freedom and dignity, is part of what our culture means by these concepts. A man whose home may be entered at the will of another, whose conversations may be overheard at the will of another, whose marital and familial intimacies may be overseen at the will of another, is less of a man, has less human dignity, on that account. He who may intrude upon another at will is the master of the other and, in fact, intrusion is a primary weapon of the tyrant.

Edward J. Bloustein, *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser*, 39 N.Y.U. L. Rev. 962, 973–74 (1964).

Importantly, the cause of action for invasion of privacy imposes liability based on a particular method of obtaining information, not the content of the information obtained, or even the use put to the information by the intruder following the intrusion. Comment at 720; *see also* 1 J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 5:87, at 5–178.2 (2d ed. 2003). Thus, proof that information obtained through an intrusion has been distributed to third parties is not required. *See* Charles Fried, *Privacy*, 77 Yale L.J. 475, 493 (1968) (recognizing that privacy is the legal right to control the disclosure of information).

■ Invasion of privacy developed from "the common law to fill a need for the protection of the interest which a person has in living without unwarranted publicity." *Bremmer v. Journal–Tribune Publ'g Co.*, 247 Iowa 817, 822, 76 N.W.2d 762, 765 (1956); *see also* Restatement (Second) of

Torts § 652A cmt. *a,* at 376 (1977) (noting the tort generally protects a person's "right to be let alone"). Four types of invasion of privacy were recognized: "unreasonable intrusion upon the seclusion of another, ... appropriation of the other's name or likeness, ... unreasonable publicity given to the other's private life, ... [and] publicity that unreasonably places the other in a false light before the public." *Id.* § 652A(2), at 376. These four distinct forms of invasion each represent an interference with the plaintiff's right to be left alone, but they are otherwise unrelated. *Id.* § 652A cmt. *b,* at 377.

■ We first recognized a cause of action for invasion of privacy in 1956. *Bremmer,* 247 Iowa at 822, 76 N.W.2d at 765. We adopted the definition of invasion of privacy recognized by the Restatement (Second) of Torts, including unreasonable intrusion upon seclusion. *Winegard v. Larsen,* 260 N.W.2d 816, 822 (Iowa 1977); *see also Stessman v. Am. Black Hawk Broad. Co.,* 416 N.W.2d 685, 686 (Iowa 1987). This form of invasion of privacy generally requires the plaintiff to establish two elements. The first element requires an intentional intrusion into a matter the plaintiff has a right to expect privacy. *Stessman,* 416 N.W.2d at 687. The next element requires the act to be " 'highly offensive to a reasonable person.' " *Id.* (quoting *Winegard,* 260 N.W.2d at 822). We have held that an intrusion upon seclusion occurs when a person " '*intentionally intrudes,* physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be *highly offensive to a reasonable*

*person.' " In re Marriage of Tigges,* 758 N.W.2d 824, 829 (Iowa 2008) (quoting Restatement (Second) of Torts § 652B, at 378).

The Restatement (Second) of Torts does not provide a specific definition of "intrusion." However, it does give several examples of facts that support a finding of an intrusion. These examples include a newspaper reporter taking the photograph of a woman sick with a rare disease in a hospital room and a private detective in an adjacent building taking intimate photos of activities within another's bedroom. Restatement (Second) of Torts § 652B illus. 1, 2, at 379. Additionally, an invasion occurs when a private detective taps another person's telephone and installs a recording device. *Id.* § 652B illus. 3, at 379.

In this case, the parties do not dispute that placing a camera in a bathroom would be highly objectionable to a reasonable person, nor do they dispute that a bathroom is a place where a reasonable person expects to be left alone. Instead, the parties disagree about the proof necessary to show the act of intrusion occurred. Koeppel primarily argues the installation of the camera in the bathroom with the intent to view is sufficient. Speirs argues the element of "intrusion" requires proof of an actual viewing at the time the activities in private took place or a recording that could be viewed at a later time. In other words, Speirs claims he could not be liable for his conduct if the camera could not function to produce an image. We proceed to resolve this dispute by examining the facts in light of the policy underlying the cause of action.[1]

1. While a physical intrusion is easily understood to violate the right to privacy, the tort has obviously expanded into a variety of nonphysical intrusions largely brought on by voyeuristic desires facilitated by changing technology. The topic has given rise to much legal commentary, including an article recognized as having one of the most clever titles for a law review note on the topic, Bill Prewitt, Note, *The Crimination of Peeping Toms and Other Men of Vision,* 5 Ark. L. Rev. 388 (1951). W. Page Keeton et al., *Prosser and*

## B. Sufficient Evidence of Intrusion.

Courts across the nation are divided on the question whether a person can intrude without actually viewing or recording the victim. Some courts conclude the installation of surveillance equipment in a private place is sufficient to show an intrusion. The seminal case representing this view is *Hamberger v. Eastman*, 106 N.H. 107, 206 A.2d 239 (1964). In *Hamberger*, a husband and wife brought an invasion-of-privacy suit against their landlord, who they alleged installed a recording device in their private bedroom. 206 A.2d at 239–40. The plaintiffs alleged the device was "capable of transmitting and recording any sounds and voices originating" from their bedroom. *Id.* at 240. The landlord argued no claim for relief had been stated because the plaintiffs had not alleged that anyone listened or overheard anything originating from the bedroom. The court held the plaintiffs were not required to prove the defendant actually overheard or viewed the activities in a secluded place to show an intrusion occurred. *Id.* Instead, it found an intrusion occurs when the defendant performs an act that had the potential to impair a person's peace of mind and comfort associated with the expectation of privacy. *Id.*

Other courts followed the *Hamberger* approach in a variety of contexts. In *Amati v. City of Woodstock*, 829 F.Supp. 998 (N.D.Ill.1993), the court found the defendant's act of placing a recording device on a private telephone line in a police station was intrusive and disruptive and that "it ruins [one's] privacy" because a person "would never obtain the full benefits accorded to a private place if he or she reasonably believed someone would or could be listening." *Amati*, 829 F.Supp. at 1010. While the court only decided the tort does not require an allegation that someone actually listened, the rationale it employed emphasized that the full benefits of privacy protected by the tort are diminished when a reasonable person believes someone could have listened. *See id.*

Other courts have similarly focused on the potential for viewing created by the defendant's actions in framing the interest protected by that tort. *See Harkey v. Abate*, 131 Mich.App. 177, 346 N.W.2d 74, 76 (1983) ("In our opinion, the installation of the hidden viewing devices alone constitutes an interference with that privacy which a reasonable person would find highly offensive. And though the absence of proof that the devices were utilized is relevant to the question of damages, it is not fatal to plaintiff's case."); *see also New Summit Assocs. Ltd. P'ship v. Nistle*, 73 Md.App. 351, 533 A.2d 1350, 1354 (1987) ("The intentional act that exposed that private place intruded upon appellee's seclusion."). In *Harkey*, the plaintiff and her daughter were patrons at the defendant's roller-skating rink. 346 N.W.2d at 75. While in the rink's women's restroom, they discovered see-through panels in the ceiling that facilitated viewing the inside of stalls from the other side. *Id.* The plaintiff sued for invasion of privacy, alleging the installation of the hidden viewing devices alone constituted a wrongful intrusion upon seclusion. *Id.* at 75–76. The court noted after a full analysis that a Michigan statute criminalizing the installation of hidden cameras in bathrooms pro-

*Keeton on the Law of Torts* § 117 n.57, at 855 (5th ed. 1984). The name "peeping Tom" originated in the year 1040 in England when Lady Godiva rode naked through the streets in an attempt to make a political appeal to her husband, the Earl of Mercia. Lisa F. Wu,

*Peeping Tom Crimes*, 28 Pac. L.J. 705, 705 n.1 (1997). All the townspeople were ordered to stay indoors with the curtains drawn during her ride, but one man who defied the order was struck blind and dubbed the town's "Peeping Tom." *Id.*

vided a specific expression of the state's public policy against such conduct. *Id.* at 76.

Similarly, in *Johnson v. Allen*, 272 Ga. App. 861, 613 S.E.2d 657 (2005), an employer installed a camera behind a ceiling tile above a stall in the women's bathroom. *Johnson*, 613 S.E.2d at 659. The manager testified he installed the camera after he had heard rumors of employees using and selling drugs on the premises. *Id.* In addressing the invasion-of-privacy claim brought by the female employees who discovered the hidden camera, the court first noted the use of a bathroom is "an immensely intimate act." *Id.* at 660. However, the court continued by noting that, when a private place is not used for its intended purposes, the employer's right to prevent illegal activity must be weighed against the right to seclusion. *See id.* Yet, there was no evidence the surveillance was conducted as an immediate follow-up to a tip that drugs were being sold or used in the bathroom. *Id.* Instead, the court reasoned the camera was positioned to view the women in the bathroom continuously, without reasonable limitation. *Id.* Most notably, the court determined under its standard of review that, although there was no conclusive evidence that the camera was operational at any point in time, the plaintiffs must be afforded all reasonable inferences from the record. *Id.* at 661. As a result, the court found the mere presence of the camera in the women's restroom constituted sufficient evidence to allow the plaintiffs' claims to survive summary judgment. *Id.* The *Hamberger* view that mere placement of equipment can constitute an intrusion has continued to be followed in several other jurisdictions. *See Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 97 Cal.Rptr.3d 274, 211 P.3d 1063, 1078 (2009) (holding a hidden video camera in plaintiffs' office that was capable of being operated by the employer established

an intrusion); *see also Kohler v. City of Wapakoneta*, 381 F.Supp.2d 692, 704 (N.D.Ohio 2005) (noting the installation of a hidden listening device or camera is enough to establish an intrusion, regardless of whether the devices were actually used, because an invasion consists of an intentional interference with a person's interest in solitude).

On the other hand, other courts have adopted a standard of intrusion requiring a defendant either see or hear another person's private activities. *See Meche v. Wal–Mart Stores, Inc.*, 692 So.2d 544, 547 (La. Ct.App.1997) (finding no intrusion occurred when evidence showed that a loss-prevention employee had positioned a video camera in a hole of a ceiling panel of an employee bathroom but had not connected the receiver to the monitor so that the camera could transmit images to a videotape recorder located in another room before the camera was discovered, even though the plaintiffs feared their private actions had been recorded despite the evidence to the contrary); *Moffett v. Gene B. Glick Co.*, 621 F.Supp. 244, 284 (N.D.Ind. 1985) ("[W]hile Hall's intercom may have made it possible to overhear a conversation, no intrusion would have occurred until something was actually overheard."), *overruled on other grounds by Reeder–Baker v. Lincoln Nat'l Corp.*, 644 F.Supp. 983, 986 (N.D.Ind.1986); *Oliver v. Pac. Nw. Bell Tel. Co.*, 53 Or.App. 604, 632 P.2d 1295, 1299 (1981) (concluding evidence of defendant placing the mechanisms for overhearing a conversation in place is insufficient and that actual intrusion upon a conversation is necessary to establish an invasion); *see also Marks v. Bell Tel. Co. of Pa.*, 460 Pa. 73, 331 A.2d 424, 431 (1975) (holding uncontested evidence that recorded conversations were never listened to and had been destroyed precluded a find-

ing that an intrusion occurred). This standard appears to represent the minority view.

In deciding a standard for Iowa, we think it is important to keep in mind that the tort protects against acts that interfere with a person's mental well-being by intentionally exposing the person in an area cloaked with privacy. *See* William L. Prosser, *Privacy*, 48 Cal. L. Rev. 383, 392 (1960) [hereinafter Prosser]. The point of disagreement among courts across the nation essentially boils down to whether the harm sought to be remedied by the tort is caused by accessing information from the plaintiff in a private place or by placing mechanisms in a private place that are capable of doing so at the hand of the defendant. Both perspectives clearly have support in other jurisdictions. However, we find the approach taken in *Hamberger* and its progeny is more consistent with the spirit and purpose of the protection of privacy. The secret use of an electronic listening or recording device is abhorrent to the interests sought to be protected by the tort. *Amati*, 829 F.Supp. at 1010. The approach is also consistent with the path we have started to follow. *See Tigges*, 758 N.W.2d at 829 (finding the installation of equipment, recording activities with the equipment, and attempting to view the activities recorded established an intentional intrusion). Additionally, the comments and illustrations contained in the Restatement (Second) of Torts make no suggestion that the intrusion into solitude or seclusion requires someone to actually see or hear the private information. *See* Restatement (Second) of Torts § 652B illus. 3, at 379. Finally, the minority rule fails to provide full protection to a victim, while giving too much protection to people who secretly place recording devices in private places. Direct evidence that an actual viewing occurred can be difficult to establish, and a person who is inclined to

secretly place a camera in a private area can easily incapacitate the camera when it is not in use so as to minimize any responsibility upon discovery. A plaintiff who learns a camera was placed in a private place should not be forced to live with the uncertainty of whether an actual viewing occurred. Such an approach would leave those victims with a reasonable belief that someone could have listened to or seen a private moment without a remedy simply because the device was unable to actually operate to invade privacy at the time it was discovered. *See Amati*, 829 F.Supp. at 1010.

We recognize this case is complicated by evidence that the camera could not be configured and operated after it was discovered to capture images from the bathroom and transmit them to the monitor and recorder in the office and by Speirs' claim that he was never able to use the equipment to actually see into the bathroom. This evidence also adds challenges to establishing the legal standard for the fact finder to apply to resolve the case.

█ It would be inconsistent with the policy of the tort to find an intrusion when the privacy of the plaintiff could not have been exposed in any way. Thus, a belief by a plaintiff that a person invaded his or her privacy by placing an apparent recording device in a private area does not establish an intrusion if the device was not capable of being configured or operated to transmit or record in any conceivable way. Accordingly, proof the equipment is functional is an ingredient in the inquiry. Indeed, the very purpose of the tort is to protect the opening up of a private place where the plaintiff seeks seclusion. Prosser, 48 Cal. L. Rev. at 392. If the fact finder finds from the evidence that the device could not have intruded into the privacy of the plaintiff in any manner, the

tort of invasion of privacy has not been committed.[2] Yet, if the fact finder finds from the evidence that the device could have intruded into the privacy of the plaintiff, the element of intrusion is satisfied. This approach is consistent with *Hamberger*, *Amati*, and other cases that find an intrusion when the potential for projecting private information existed. *See Marks*, 331 A.2d at 431 (adopting "some potential" standard). The equipment does not need to be operational at the time it is discovered. Instead, the fact finder must only conclude that the equipment could have been operational so as to invade the plaintiff's privacy. *See LeCrone v. Ohio Bell Tel. Co.*, 120 Ohio App. 129, 201 N.E.2d 533, 538 (1963) (finding actual listening of information in a private place is difficult to prove, but that the installation of a device that can be used to listen presents an inference of listening sufficient to overcome summary judgment).

In this case, Speirs presented evidence tending to dispute Koeppel's claim the battery-operated camera could have functioned at any time when she was in the bathroom. This evidence tended to show the camera did not send a strong enough signal to Speirs' office that would have exposed her privacy. Yet, Koeppel submitted evidence that the camera was capable of working when a fresh battery was in place. Under the standard we adopt in this case, a reasonable fact finder could conclude the camera was capable of exposing the plaintiff's activities in the bathroom. Importantly, there was evidence the camera was capable of operation, and there was evidence it operated in the past from a different location in the office. This evidence meets the standard and would lead a reasonable person to believe his or her privacy had been invaded.

■ Speirs argues that a standard of intrusion that does not require evidence that the camera actually functioned to record an image essentially creates a tort of attempted invasion of privacy. We disagree. We recognize attempted conduct normally does not give rise to an intentional tort because the required element of actual harm does not occur. *See* Anthony J. Sebok, *Deterrence or Disgorgement? Reading Ciraolo After Campbell*, 64 Md. L. Rev. 541, 565 (2005) [hereinafter Sebok]. It is axiomatic that there can be no tort if there is no injury. *See United States v. Stefonek*, 179 F.3d 1030, 1036 (7th Cir.1999) ("[T]here is no tort without an injury ... a litigant may not complain about a violation of rights that does not harm the interest (whether in privacy or in a fair trial) that the rights protect. (There are no 'attempted torts.')."); *see also* Sebok, 64 Md. L. Rev. at 565. Thus, we agree with Speirs that our law does not recognize a tort of attempted invasion of privacy. *See Meche*, 692 So.2d at 547. However, the act of intrusion is complete once it is discovered by the plaintiff because acquisition of information is not a requirement. *Phillips v. Smalley Maint. Servs., Inc.*, 435 So.2d 705, 709 (Ala.1983) (citing Restatement (Second) of Torts § 652B illus. 5, at 379). Additionally, harm from intrusion arises when the plaintiff reasonably believes an intrusion has occurred. *See Amati*, 829 F.Supp. at 1010 (recognizing same proposition). Therefore, the standard we establish to satisfy the intrusion element does not create a claim for attempted invasion of privacy.

---

**2.** Even though the act of intentionally placing an inoperable camera or recording device into a private area may not support the intrusion element of invasion of privacy, it could give rise to the tort of intentional infliction of emotional distress.

## IV. Conclusion.

In light of the policies underlying intrusion upon seclusion and our prior holdings, we conclude the district court erred in granting Speirs' motion for summary judgment. An electronic invasion occurs under the intrusion on solitude or seclusion component of the tort of invasion of privacy when the plaintiff establishes by a preponderance of evidence that the electronic device or equipment used by a defendant could have invaded privacy in some way.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except MANSFIELD and ZAGER, JJ., who take no part.