FISHER, P.J.A.D.
*90 In reversing a partial summary judgment entered in defendants' favor, we reject the notion that plaintiffs-in alleging an invasion of their privacy in an office building's restroom-could only claim the presence of a hidden recording device by demonstrating their images were actually captured.
*91 Here, more than sixty women claimed, among other things, that their privacy was invaded when defendant Teodoro Martinez, a janitor employed by defendant CRS Facility Services, LLC, placed and maintained hidden surveillance equipment for approximately six months to a year[1] in a women's restroom in a five-story Somerset office building owned by defendant I & G Garden State, LLC, and managed by defendants Jones Lang LaSalle, Inc. and LaSalle Investment Management, Inc.[2] In November 2009, following discovery of a recording device in a women's restroom, police questioned Martinez and obtained two USB camera devices and a laptop from the CRS office at the Somerset office building; a search of Martinez's residence uncovered other video surveillance devices *492 and computer equipment, and approximately eight hours of surreptitious recordings of women. Martinez was indicted but fled the country when released on bail.
After a considerable period of discovery, defendants moved for partial summary judgment, seeking to dismiss the claims of thirty-five plaintiffs who were unable to assert that their images could be found in the eight hours of footage seized during the police investigation. The motion judge concluded that to defeat summary judgment these plaintiffs were required to show that a recording device was present when they used the women's restroom and that, to prove a device's presence, each plaintiff needed to assert her image appeared in existing footage:
The bottom line is [plaintiffs] still have to prove the camera was there.... The only way they can do that is by looking at the video to establish they were there.
Because this group of plaintiffs failed that test, the judge granted defendants' partial summary judgment motions.
*92 The dismissed plaintiffs sought reconsideration without success; three plaintiffs, however, identified their images in the available materials and partial summary judgment was vacated as to them.
Two years later, the building's owner and property managers sought the entry of summary judgment dismissing the claims of the remaining plaintiffs. They argued, among other things, that the janitor's wrongdoing was unforeseeable and that it would be unreasonable to impose on them a duty to ensure that someone like this janitor would not commit intentional torts of this sort. Another judge denied that motion, and, during jury selection, the remaining plaintiffs and defendants settled.
With all issues as to all parties resolved, the group of plaintiffs, whose claims were dismissed, appeal.[3] They contend the law imposes no obligation in this circumstance that they demonstrate their images were actually captured or that they were present when recording devices were active; they also argue summary judgment was premature because discovery was incomplete. The owner and property managers cross-appeal the denial of their summary judgment motion.
We turn first to plaintiffs' appeal and thereafter explain why we do not reach the issues posed in the cross-appeal.
I
In reversing the partial summary judgment entered against the group of plaintiffs now before us, no reiteration of what we said about the essential elements of the right to privacy in Soliman v. Kushner Cos., 433 N.J. Super. 153, 77 A.3d 1214 (App. Div. 2013), is necessary. It suffices to mention that the right of privacy has its genesis in the Fourteenth Amendment's right to be free from unreasonable and intrusive government action; both our State Constitution, N.J. Const. art. I, ¶ 1, and the common law *93 protect New Jersey's citizens from privacy invasions and intrusions committed by private actors as well. Id. at 168, 77 A.3d 1214. The common law, in fact, recognizes a number of different types of privacy invasions; here, we consider "the tort of intrusion on seclusion." Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81, 94, 609 A.2d 11 (1992) ; Soliman, 433 N.J. Super. at 169, 77 A.3d 1214. This tort imposes civil liability on *493 "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or [the other's] private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." Hennessey, 129 N.J. at 94-95, 609 A.2d 11 (quoting Restatement (Second) of Torts, § 652B (Am. Law. Inst. 1977) ).
With these general principles in mind, we start with the unremarkable conclusion that a surreptitious placement of a recording device in a restroom constitutes an intrusion on a user's solitude or seclusion that a reasonable person would find highly offensive. No one questions that here. See Soliman, 433 N.J. Super. at 170-72, 77 A.3d 1214. But defendants-and the motion judge-interpreted the tort's elements as imposing what we think is the truly remarkable conclusion that only a plaintiff who is able to produce evidence that her image was actually captured by a hidden recording device may maintain this cause of action.
In rejecting defendants' construct, we agree with the view of Iowa's highest court that the intrusion-on-seclusion tort "protects against acts that interfere with a person's mental well-being"; consequently we hold that a "secret use of an electronic listening or recording device is abhorrent" to the "spirit and purpose" of this tort regardless of whether "someone ... actually see[s] or hear[s] the private information." Koeppel v. Speirs, 808 N.W.2d 177, 184 (Iowa 2011). An approach that requires a plaintiff to brandish the smoking gun of an intrusion-an actual image of the event-"fails to provide full protection to a victim" and gives "too much protection to people who secretly place recording devices in private places"; such an undue expectation of what a victim must prove fails to recognize that
*94 [d]irect evidence that an actual viewing occurred can be difficult to establish, and a person who is inclined to secretly place a camera in a private area can easily incapacitate the camera when it is not in use so as to minimize any responsibility upon discovery.
[ Ibid. ]
Clandestine intrusions of this nature injure the victim's "peace of mind" and the "comfort associated with the expectation of privacy." Id. at 182. An injury logically results from the mere learning of an intrusion notwithstanding the lack of actual recordings. Consequently, we hold that the cause of action is maintainable even if the victim cannot demonstrate she was ever recorded. To hold otherwise would excuse the conduct of those tortfeasors who delete, secrete or destroy once-captured images before being caught.[4] We reject this approach because it presupposes the availability of evidence that is often not likely to exist.
Like other state appellate courts, we hold that a victim of such an intrusion need not provide evidence of her captured image to prove an intrusion occurred. See Johnson v. Allen, 272 Ga.App. 861, 613 S.E.2d 657, 661 (2005) ; Koeppel, 808 N.W.2d at 182 ; New Summit Assocs. Ltd. P'ship v. Nistle, 73 Md.App. 351, 533 A.2d 1350, 1354 (Md. Ct. Spec. App. 1987) ; Harkey v. Abate, 131 Mich.App. 177, 346 N.W.2d 74, 76 (1983) ; Hamberger v. Eastman, 106 N.H. 107, 206 A.2d 239, 242 (1964) ; see also *494 Kohler v. City of Wapakoneta, 381 F.Supp.2d 692, 704 (N.D. Ohio 2005). It is enough that the victim provide evidence supportive of a finding that a recording device was present when she was in a secluded area, such as a restroom, where a reasonable expectation of privacy may be assumed; this fact may in many instances, including the circumstances here, be shown inferentially. The absence of direct evidence in the form of an available purloined image may *95 have an impact on the victim's quest for damages, but its absence is not fatal to the cause of action. Carter v. Innisfree Hotel, Inc., 661 So.2d 1174, 1179 (Ala. 1995) ; Harkey, 346 N.W.2d at 76.
The motion judge also took a far more restrictive view of plaintiffs' proofs than permitted by the Brill [5] standard. By linking the survival of a victim's claim to the existence of her surreptitiously-recorded image, the judge failed to give plaintiffs the benefit of reasonable inferences arising from other evidence. So extensive was the evidence of the janitor's wrongful actions-many other plaintiffs were able to confirm that their privacy was invaded by identifying their own images in the eight hours of footage obtained by police-that a reasonable inference must arise in favor of other plaintiffs who were unable to make such an identification. See Kohler, 381 F.Supp.2d at 704 ; Johnson, 613 S.E.2d at 661. This reasonable inference should have been applied in favor of any plaintiff who could assert her use of the facilities during the same general time frame other plaintiffs were spied upon. For example, the record supports an assumption for summary judgment purposes that the janitor's illicit actions occurred between six months to a year before his conduct was discovered. Any plaintiff who could assert she used the same restroom around the same time should not have been dismissed by way of summary judgment. Moreover, such a plaintiff need not specifically delineate the dates on which she used the infringed facility. It would suffice if a plaintiff could demonstrate she worked in the building in an area close enough to allow a factfinder to assume her occasional use of the surveilled restroom.
For these reasons, we reverse the partial summary judgment entered on behalf of all moving defendants[6] against these plaintiffs *96 and remand for further proceedings.[7]
II
The issues presented in the cross-appeal arrive in an unusual way. After *495 entry of the partial summary judgment discussed above, the property's owner and managers moved for summary judgment against the remaining plaintiffs, arguing, among other things, they had no duty to prevent the janitor's actions or that it would otherwise be unreasonable to impose liability because of the absence of any prior occurrences on the premises. Because that motion was filed and denied approximately two years after the summary judgment discussed above, we are asked to review an order entered at a time when the only plaintiffs now involved were no longer active participants.[8]
In this circumstance, we deem the most appropriate course is to leave the merits of the cross-appeal for another day and allow the *97 case to proceed as if the now-restored plaintiffs' claims had not been previously dismissed as, indeed, they should not have been. Once those remaining issues are finally adjudicated, the owner and property managers may seek review if they remain aggrieved by the order denying their summary judgment motion. Stated another way, our ruling on the appeal warrants a turning back of the clock to that day in 2014 when the judge mistakenly granted the partial summary judgment that inspired plaintiffs' appeal. Because the denial of summary judgment is never binding until entry of final judgment, R. 4:42-2, the trial court remains free to revisit or leave in its place the existing ruling about the owner and managers' liability. Certainly, there was nothing compelling about the motion's disposition that would have invited interlocutory review at the time it was made, and now that the matter requires further proceedings we do not view it advisable to consider those issues at the present time. Of course, our disposition of the cross-appeal should not be viewed as intimating any particular view about the merits of the parties' arguments on the issues raised in the cross-appeal.
III
For all these reasons, we reverse the partial summary judgment against plaintiffs and remand for further proceedings. In declining to review the order questioned in the cross-appeal, we recognize the property owner and managers may pursue those issues upon entry of a final judgment if they remain aggrieved by its existence.
Reversed and remanded. We do not retain jurisdiction.

This estimate comes from a statement given by Martinez to a police investigator that the investigator repeated at his deposition in this matter.

The other defendants who have responded to this appeal are Ruben Sabillon, Jamar Sailor, and their employer, Planned Security Services, Inc., which provided security for a tenant that employed many of the plaintiffs.

As noted, the judge first dismissed the claims of thirty-five plaintiffs. On reconsideration, three obtained reinstatement of their claims. The notice of appeal, however, identifies only thirty appellants.

If we were to adopt the motion judge's approach we would also insulate from liability one who intrudes into a victim's seclusion or solitude without a recording device, such as one who bores a hole in a wall or installs a one-way mirror to secretly peep in on others. The thesis urged by defendants and adopted by the motion judge would bar any remedy for such an intrusion unless the tortfeasor was actually caught in the act.

Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).

Partial summary judgment in favor of all defendants was granted on the slim reed we have now discarded. Some defendants may very well have other defenses not implicated by this appeal. Only the owner and property managers seek relief, on other grounds, by way of their cross-appeal. In addition, we do not address plaintiffs' other pleaded causes of action because the motion judge also gave them no consideration in dismissing the claims of these plaintiffs.

Defendants seek to attach some significance to Villanova v. Innovative Investigations, Inc., 420 N.J. Super. 353, 364-65, 21 A.3d 650 (App. Div. 2011), where we affirmed a summary judgment entered in favor of the defense on an invasion of privacy claim. There, the defendants had placed a tracking device inside the glove compartment of the plaintiff's motor vehicle and kept track of the vehicle's whereabouts for approximately forty days. We affirmed summary judgment due to the absence of evidence that the vehicle had been driven to a secluded location that would fall within the vehicle user's reasonable privacy expectations. That holding has no bearing on the issues presented here. A motor vehicle user has no reasonable expectation of keeping private the vehicle's location when on public streets or driven to other public places any more than plaintiffs here could claim a reasonable expectation of privacy when walking the common areas of the office building.

We are mindful that the dismissed plaintiffs certainly were entitled to respond to this later motion because the partial summary judgment that dismissed their claims was not a final and appealable order. Indeed, experience demonstrates the advisability of parties remaining involved in such circumstances. See generally Rogers v. Spady, 147 N.J. Super. 274, 371 A.2d 285 (App. Div. 1977).