SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Jaime Friedman v. Teodoro Martinez (A-37/81-18) (081093)**

**Argued January 21, 2020 -- Decided June 16, 2020**

**RABNER, C.J., writing for the Court.**

"Intrusion upon seclusion" is a tort that allows individuals whose privacy has been invaded to seek recovery for their injuries. In this appeal, the Court considers the history and nature of right to privacy claims as well as the showing needed to withstand a motion for summary judgment.

This case arises out of the discovery that a janitor at an office building had been hiding video-recording devices in the women's bathrooms and a locker room for a number of months. Defendant Teodoro Martinez supervised a night cleaning crew at 400 Atrium Drive, a five-story office building estimated to have about fifteen women's bathrooms. Martinez concealed cameras in at least some of the women's restrooms and the women's locker room. In November 2009, an employee of a corporate tenant of the building discovered a camera in the ceiling of a women's restroom on the third floor.

A police investigation led to Martinez's arrest. Detective Ordel Taylor interviewed him on November 30, 2009. Martinez revealed that he had hidden three or four cameras in the building. He initially estimated that he had been recording for five months but later admitted it could have been more than a year. Martinez said he watched some of the videos and erased them; he also said he downloaded some of the recordings to his computer and erased some of that footage. The recording devices were portable, and not much is known about when they were concealed, in which restrooms, or for how long. About three hours of footage was recovered, which included graphic recordings of women using a bathroom. Martinez was charged with one count of third-degree invasion of privacy. At some point after his arrest, he fled the country.

A group that eventually included about sixty women who had worked at the office building filed an eleven-count complaint against multiple defendants, including Martinez; his employer; related entities I&G Garden State, LLC, the owner of the office building, and Jones Lang LaSalle, Inc., the building's property manager (collectively, the owner-managers); and Planned Security Services, Inc., a security company hired by a tenant, along with the two guards who worked at the building (collectively, Planned defendants).

1

Two groups of plaintiffs emerged: the Friedman plaintiffs, a group of about thirty women who could identify their images on the recovered video footage; and the Arendt plaintiffs, the remaining thirty-five plaintiffs, who could not. Defendants moved for partial summary judgment solely against the Arendt plaintiffs, arguing they could not demonstrate an invasion of their privacy. Plaintiffs countered that proof they were captured on videotape was not necessary to state a claim; that a jury could reasonably infer they had been subjected to surveillance even if no video footage of them survived; and that summary judgment would be premature because discovery was ongoing.

In January 2014, the trial court granted summary judgment against the Arendt plaintiffs and dismissed their claims. The court observed that "proof of a wrongful act must be shown to defeat" defendants' motion and that plaintiffs were entitled to all favorable inferences. The court repeatedly agreed with plaintiffs that evidence of a recording was not needed to state a claim but found there was no other way -- in this case -- to show the women had been in a restroom when a camera was present.

The court explained that this case was more complex than Soliman v. Kushner Cos., Inc., 433 N.J. Super. 153 (App. Div. 2013), in which the defendants admitted they had installed cameras in certain restrooms of an office building. The court noted that, unlike in Soliman, plaintiffs in this case "can't prove the camera was there when the plaintiff was in" the bathroom. In response to plaintiffs' argument that judgment would be premature, the court underscored that "the case is three years old." The court lamented the lack of evidence during oral argument. Plaintiffs' counsel said he could submit affidavits, but no submissions along those lines were made, and the court, in its decision, noted, "I don't have any certifications from any of the" Arendt plaintiffs.

The Friedman plaintiffs proceeded with their case against all defendants until February 2016, when the trial court granted summary judgment in favor of Martinez's employer and partial summary judgment in favor of the owner-managers. Weeks later, the Friedman plaintiffs settled with the remaining defendants.

The Arendt plaintiffs filed a notice of appeal in July 2016 to challenge the trial court's 2014 summary judgment order. The owner-managers, in turn, filed a cross-appeal to challenge the trial court's partial denial of their motion for summary judgment. In support of their cross-appeal, the owner-managers submitted materials in July 2016 that had not been produced before the 2014 dismissal of the Arendt plaintiffs, including the summary of Detective Taylor's interview of Martinez, discussed above.

The Appellate Division reversed the grant of summary judgment. 454 N.J. Super. 87, 90, 94 (App. Div. 2018). The court held that plaintiffs can maintain a cause of action for intrusion upon seclusion without proof "their images were actually captured" in a recording. Ibid. Although the absence of direct evidence may affect a victim's claim for damages, the court noted, it is possible to prove an invasion of privacy through

2

circumstantial evidence. <u>Id.</u> at 94-95. The Appellate Division observed that "[a]ny plaintiff who could assert she used the same restroom around the same time should not have been dismissed by way of summary judgment." <u>Id.</u> at 95. In the Appellate Division's view, the trial court "failed to give plaintiffs the benefit of reasonable inferences arising from other evidence" and "took a far more restrictive view of plaintiffs' proofs than" the summary judgment standard permits. <u>Ibid.</u> The court therefore reversed and remanded for further proceedings. <u>Id.</u> at 95-96.

In so ruling, the Appellate Division apparently read the trial court's remarks in a more restrictive way than the Court. Viewed in context, the trial judge concluded that more evidence of some sort was required to prove the presence of a camera, not that a recorded image was needed for the claim to proceed.

The Appellate Division declined to reach the cross-appeal. <u>Id.</u> at 96-97. The Court granted petitions for certification by the owner-managers, 236 N.J. 244 (2019), and the Planned defendants, 238 N.J. 62 (2019).

**HELD:** An intrusion on privacy occurs when someone uses a private space where a spying device has been concealed and "the intrusion would be highly offensive to a reasonable person." <u>Restatement (Second) of Torts</u> § 652B. To bring a claim, the victim does <u>not</u> have to present <u>direct</u> evidence that she was secretly recorded. She can instead establish a case of intrusion on seclusion based on reasonable inferences drawn from the evidence. Here, however, there was not enough evidence in the summary judgment record to demonstrate, either directly or inferentially, that the plaintiffs who were dismissed used bathrooms with cameras in them during the relevant time period.

1. The Court traces the constitutional underpinnings and history of the common law right to privacy. The Court has previously adopted section 652B of the <u>Restatement (Second) of Torts</u>, which subjects to liability "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another . . . if the intrusion would be highly offensive to a reasonable person." The Restatement does not suggest a plaintiff must show someone saw or heard recorded information to be able to bring a claim. (pp. 20-23)

2. Neither <u>Soliman</u> nor any other reported New Jersey decision squarely addresses whether simply placing a recording device in a private space is enough to establish an invasion of privacy without proof of an actual recording. In other jurisdictions, courts have held that no evidence of an actual viewing or recording is needed; some have noted that the absence of direct proof of a recording or an actual viewing could affect a damages award but not a party's ability to state a claim. Other jurisdictions require more than the presence of an eavesdropping device or a pathway to see into a private space. To state a cause of action for invasion of privacy, those courts require some showing that a defendant actually saw or heard private activities. (pp. 23-26)

3

3. The Court agrees with the Appellate Division and the courts in many other jurisdictions that have concluded a victim does not have to present evidence that she was secretly recorded to bring a cause of action for intrusion on seclusion. The tort is tied to the placement of a surveillance device in an area reasonably expected to be private. It is the intrusion itself, and not an actual viewing, that is critical. And that intrusion takes place when a victim uses a private space where a spying device has been concealed; it does not depend on when -- or whether -- direct evidence of actual spying is found. The absence of a recording can go to the issue of damages. (pp. 27-28)

4. To establish that an intrusion occurred, a victim may rely on circumstantial evidence, and courts can draw reasonable inferences from the proofs presented. To recover in a case like this, a victim would need to show that she used an area reasonably expected to be private, like a restroom or locker room, while a recording device was concealed there. A court could reasonably infer that someone who worked in the vicinity of a bathroom around the same time a camera was hidden there met that standard. And a person who visited a building once could satisfy the test with proof she used a bathroom at the same time a camera was there. (pp. 28-29)

5. The Court reviews the summary judgment standard, which it then applies to the record the parties presented to the trial court in 2014. The evidence falls short of demonstrating facts within the Arendt plaintiffs' control: that they used bathrooms with cameras during the relevant time period. The 2014 record does not reveal where or when the Arendt plaintiffs worked in the office building, which restrooms they used, or the particular restrooms the Friedman plaintiffs used, which could have helped identify where cameras had been placed. Nearly three years after the filing of the initial complaint, despite a motion for summary judgment and extensive argument about the state of the record, the Arendt plaintiffs had not offered proof from which one could reasonably infer that they used a restroom while a camera was placed there. And the court could not reasonably infer from the record that cameras had been placed in all fifteen bathrooms. It was therefore not possible for the trial court to find that plaintiffs had satisfied their burden by a preponderance of the evidence at the summary judgment stage. (pp. 29-34)

6. All parties are entitled to have their case decided on the basis of the record before the trial court at the time summary judgment is decided. And without some showing of how the outstanding discovery materials requested could help the Arendt plaintiffs state a prima facie claim of intrusion, it was not premature to grant summary judgment after three years of discovery. (pp. 34-35)

**The judgment of the Appellate Division is REVERSED and the trial court's order granting summary judgment is REINSTATED.**

**JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.**

4

SUPREME COURT OF NEW JERSEY

A-37/81 September Term 2018

081093

Jaime Friedman; Karen Banks; Karen Barno;
Pei-Ling Cuiffo; Melissa Current; Linda Cusick;
Kathleen D'Angiollio; Dipti Desai; Sharon Hunt;
Pamela Hurley; Monique Jacques; Julianne Kelly;
Meredith Kobstad; Melanie Lehman;
Marie D. McMahon; Leyda J. Montalvo; Nan Nguyen;
Sophia Pennant; Ana Rivera; Michele Sellnow;
Randee Beth Soffer; Cindy Trabb; Nicole Beim;
Mary Lou Burt; Patricia McEvoy; Colleen O'Reilly;
Minwatti Ramsaroop; Tina Rogers; Pamela Cook,
Executrix of the Estate of Fannie Woods, Deceased;
and Diane Van Schoick,

Plaintiffs,

and

Ellen Arendt; Benita C. Benjamin;
Laura Dandorph; Jennifer DiMilia;
Tina Galloway; Janice Goslin; Lori Gray;
Suniti Haridas; Sharonda M. Hogans; Eleanor Hunter;
Maxine Kennedy; Stella Lee; Eleni C. Michael;
Ann M. Oslin; Michele Pfeiffer; Alysia Sachau;
Kalpana Shah; Angela Sims; Tracey Taylor;
Christine Vigilotti; Ashley Watson; Donna Watson;
Nettie White; Kelly Williams; Natasha Johnson;
Diane Lanzafama; Grazyna LeBron; Carol Molinari;
Nelita Ponte; and Kimberly Bryant,

Plaintiffs-Respondents,

v.

1

Teodoro Martinez,

Defendant,

and

I&G Garden State, LLC, Jones Lang
LaSalle, Inc., and LaSalle Investment
Management, Inc.,

Defendants-Appellants,

and

CRS Facility Services, LLC,

Defendant/Third-Party
Plaintiff,

v.

Ruben Sabillon, Jamar Sailor, and
Planned Security Services, Inc.,

Third-Party Defendants-Appellants,

and

Planned Companies d/b/a Planned
Building Services, Inc.; Planned Lifestyle
Services, Inc. and Clean, Inc.; Ingersoll-Rand, PLC;
ING North America Insurance Corporation;
Kratos d/b/a Kratos Defense & Security
Solutions, Inc.; Kratos Public Safety & Security
Solutions, Inc.; Kratos Technologies, LLC; and
Geoffrey Consulting Services, LLC,

Third-Party Defendants.

2

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
454 N.J. Super. 87 (App. Div. 2018).

| Argued | Decided |
| --- | --- |
| January 21, 2020 | June 16, 2020 |

William J. Buckley argued the cause for appellants
I&G Garden State, LLC, Jones Lang LaSalle, Inc., and
LaSalle Investment Management, Inc. (Schenck, Price,
Smith & King, attorneys; Thomas J. Cotton, on the
briefs).

Jeffrey S. Mandel argued the cause for appellants
Ruben Sabillon, Jamar Sailor, and Planned Security
Services, Inc. (Law Offices of Jeffrey S. Mandel,
attorneys; Jeffrey S. Mandel, on the brief).

Franklin P. Solomon argued the cause for respondents
Ellen Arendt, Benita C. Benjamin, Laura Dandorph,
Jennifer DiMilia, Tina Galloway, Janice Goslin, Lori
Gray, Suniti Haridas, Sharonda M. Hogans, Eleanor
Hunter, Maxine Kennedy, Stella Lee, Eleni C.
Michael, Ann M. Oslin, Michele Pfeiffer, Alysia
Sachau, Kalpana Shah, Angela Sims, Tracey Taylor,
Christine Vigilotti, Ashley Watson, Donna Watson,
Nettie White, Kelly Williams, Natasha Johnson, Diane
Lanzafama, Grazyna LeBron, Carol Molinari, Nelita
Ponte and Kimberly Bryant (Solomon Law Firm,
Locks Law Firm, and Hill Wallack, attorneys;
Franklin P. Solomon, Michael A. Galpern, and
Suzanne M. Marasco, of counsel, and Franklin P.
Solomon and Marissa K. Vila, on the brief).

CJ Griffin argued the cause for amicus curiae
American Civil Liberties Union of New Jersey
(Pashman Stein Walder Hayden and American Civil
Liberties Union of New Jersey Foundation, attorneys;
CJ Griffin and Jeanne LoCicero, of counsel and on the
brief, and Robyn K. Lym, on the brief).

3

"Intrusion upon seclusion" is a tort that allows individuals whose privacy has been invaded to seek recovery for their injuries. In New Jersey, the tort provides a cause of action against the intentional intrusion, "physical[] or otherwise, upon the solitude or seclusion of another . . . if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (Am. Law Inst. 1977). In this appeal, we consider the history and nature of right to privacy claims as well as the showing needed to withstand a motion for summary judgment.

This case arises out of the discovery, in November 2009, that a janitor at an office building had been hiding video-recording devices in the women's bathrooms and a locker room for a number of months. The devices were portable, and not much is known about when they were concealed, in which restrooms, or for how long. About three hours of footage was recovered, which included graphic recordings of women using a bathroom, and there is evidence that more footage was recorded and deleted.

A group of women who worked in the building filed a lawsuit against the man who made the recordings and others. The women alleged, in part, that the installation of hidden cameras in private places like bathrooms and a locker

room intruded upon their seclusion. Roughly half of the sixty plaintiffs identified themselves on the recovered footage. Defendants argued that the women who did not identify themselves on the footage did not show that they had suffered an invasion of privacy and moved for summary judgment against those plaintiffs.

In 2014, the trial court granted the motion and dismissed those plaintiffs from the case. The court held that, in general, an actual recording is not necessary to demonstrate intrusion. But the court found there was no evidence the dismissed plaintiffs had used a restroom while a camera was concealed there.

The Appellate Division reversed the trial court's judgment. The court held that a claim of intrusion upon seclusion can be established through circumstantial evidence and remanded the case to the trial court to allow the continued development of the record with that in mind.

We find that an intrusion on privacy occurs when someone uses a private space where a spying device has been concealed and "the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B. To bring a claim, the victim does not have to present direct evidence that she was secretly recorded. She can instead establish a case of intrusion on seclusion based on reasonable inferences drawn from the evidence.

Here, however, there was not enough evidence in the summary judgment record to demonstrate, either directly or inferentially, that the plaintiffs who were dismissed used bathrooms with cameras in them during the relevant time period. We therefore find that summary judgment was properly granted, and we reverse the judgment of the Appellate Division.

## I.

## A.

We glean the following facts largely from the record that existed at the time summary judgment was granted in 2014.

Defendant Teodoro Martinez supervised a night cleaning crew at 400 Atrium Drive, a five-story office building in Somerset (Franklin Township). He also cleaned restrooms during the day shift. Counsel for the owner and managers of the building estimated that there are about fifteen women's bathrooms in it.

Martinez worked for CRS Facilities Services, LLC (CRS), which had a contract to provide janitorial services at 400 Atrium Drive. As the night supervisor, Martinez had keys and access to all parts of the building. He concealed cameras in at least some of the women's restrooms and the women's locker room.

6

ING Institutional Planning Services, Inc. (ING), and other companies rented office space in the building. On November 25, 2009, one of ING's employees discovered a camera in the ceiling of a women's restroom on the third floor.

A police investigation led to Martinez's arrest. Detective Ordel Taylor interviewed Martinez on November 30, 2009, and Martinez admitted that he had placed the camera in the restroom.[1] He also revealed that he had hidden three or four cameras in the building and that the recordings from those cameras ranged from two to fifty minutes long. Martinez could not recall when he first installed the cameras. He initially estimated that he had been recording for five months but later admitted it could have been more than a year. Martinez said he watched some of the videos and erased them; he also said he downloaded some of the recordings to his computer and erased some of that footage.

Martinez consented to a search of his home. From the office building and his home, the police recovered cameras, flash drives, and computer and electronic equipment that yielded about three hours of footage of women in a bathroom or in the locker room near the building's first-floor gym.

---

[1] A summary of the interview was presented to the Court in connection with the cross-appeal the building's owner and managers filed, which we discuss later.

A grand jury in Somerset County returned an indictment against Martinez that charged him with one count of third-degree invasion of privacy, in violation of N.J.S.A. 2C:14-9(b). At some point after his arrest, Martinez fled the country.

In a deposition taken in April 2014 -- after the summary judgment ruling now on appeal -- Detective Taylor estimated that he had identified about fifteen women on the video footage with help from the human resources department of ING. He testified that he did not identify all of the women depicted and did not approach other tenants to enlist their help and try to identify other victims.

B.

On January 25, 2011, a group that eventually included about sixty women who had worked at the office building filed a complaint against multiple defendants, including Martinez; CRS; and related entities I&G Garden State, LLC, the owner of 400 Atrium Drive, and Jones Lang LaSalle, Inc., the building's property manager (collectively, the owner-managers). By the time the sixth amended complaint was filed, plaintiffs had added several defendants including Planned Security Services, Inc., a security company ING hired for its space, along with the two security guards who worked at 400

Atrium Drive (collectively, Planned defendants).  The Planned defendants were also named as third-party defendants.

The eleven-count complaint alleged invasion of privacy contrary to N.J.S.A. 2A:58D-1, tortious invasion of privacy, and intentional and negligent infliction of emotional distress by Martinez; employer liability pursuant to section 317 of the Restatement (Second) of Torts, negligent hiring and retention, and negligent supervision against CRS; negligence/premises liability against the owner-managers; negligence/inadequate security by companies allegedly employed by the owner-managers; negligence in the form of a breach of the "duty to exercise reasonable care for the safety, security and privacy of plaintiffs by allowing and failing to detect installation of devices in the women's restroom" against the owner-managers; and respondeat superior against the owner-managers for CRS's negligence.  Later in the year, the trial court consolidated the matter with cases brought by three individual plaintiffs. The trial court also appointed a special master to oversee discovery.

CRS filed a motion for summary judgment on September 18, 2013.  The owner-managers cross-moved for partial summary judgment one month later, as did the Planned defendants.  By the time the court decided the motion, two groups of plaintiffs had emerged:  the Friedman plaintiffs, a group of about

thirty women who could identify their images on the recovered video footage; and the Arendt plaintiffs, the remaining thirty-five plaintiffs, who could not.

Defendants moved for partial summary judgment. They sought summary judgment solely against the Arendt plaintiffs -- the women who did not identify themselves on the recovered footage -- and argued that those plaintiffs could not demonstrate an invasion of their privacy. (The Friedman plaintiffs are not part of this appeal.)

Among other arguments, plaintiffs countered that proof they were actually captured on videotape was not necessary to state a claim; that a jury could reasonably infer the Arendt plaintiffs had been subjected to surveillance even if no video footage of them survived; and that summary judgment would be premature. In support of the last point, plaintiffs stressed that discovery was ongoing nearly three years after the complaint had been filed, and that further discovery, including from law enforcement, could provide additional evidence in support of their claims.

On January 24, 2014, the trial court granted summary judgment against the Arendt plaintiffs and dismissed their claims. The court first noted that, although the case was three years old and they "had ample opportunity over the years to find or look at the videos," the Arendt plaintiffs had not identified

themselves in the recovered footage.  The court thus formally found that the Arendt plaintiffs were not on the recordings.

The court observed that "proof of a wrongful act must be shown to defeat" defendants' motion and that plaintiffs were entitled to all favorable inferences.  The court repeatedly agreed with plaintiffs that evidence of a recording was not needed to state a claim but found there was no other way -- in this case -- to show the women had been in a restroom when a camera was present:

> Even if they weren't on the camera, if they would show that the camera was there on March 17th and they were in the bathroom on March 17th they at least have something they can bring to the jury.
>
> * * * *
>
> [U]nless you know the camera's there, they don't have a case.  You got to establish a wrongful act.  The wrongful act has got to be more than the mere placement of [a] camera.  You got to show the camera was in there when you were in there.  And you don't have to be videotaped.  The invasion of privacy took place when the camera was there.  But they can't prove the camera was there.
>
> * * * *
>
> [T]here is no evidentiary support to be cited for the unrecorded plaintiffs' claims.  There's just nothing in the record I can hang my hat on, even giving all the favorable inferences on a summary judgment motion.  All that is known is that Mr. Martinez's recording device was placed in the bathroom on days . . . that had

11

> captured each of the women who actually appear on the tape. That's the only way they can establish that the -- the camera was in those bathrooms.

At times, the court's discussion of the need for video evidence was not crisp, for example, when it stated that "the only way they can establish that the camera was in the building is by their establishing that they're on the video. Otherwise you have to assume the camera's not there," or when the court suggested it could "only establish that the recording device was there at the times that the individual identifies themselves in the tape. It's the only way they're going to prove the tape was there, they have to look at it, otherwise there's no acknowledgement that the video cameras were there."

Elsewhere, though, the court made clear that it did not view recordings as an absolute requirement but felt constrained to focus on the video footage absent other forms of evidence. Indeed, the court stated that it "would agree" with plaintiffs that no footage was necessary "if [in] fact they could show that the camera was there" and explicitly "f[ou]nd that you don't have to have a recorded image, but there's a little more to it than that."

The court explained that this case was more complex than Soliman v. Kushner Cos., Inc., 433 N.J. Super. 153 (App. Div. 2013), in which the defendants admitted they had installed cameras in certain restrooms of an office building. The Soliman defendants claimed they did so to deter

12

vandalism and that the cameras were active for three days before they were discovered.  Id. at 159-60, 163, 171.  A plaintiff submitted a certification that she used one of the restrooms several times a day before the discovery.  Id. at 164.

The trial court here stressed the defendants' admissions in Soliman and contrasted them with the record in this case.  The court noted that, unlike in Soliman, plaintiffs in this case "can't prove the camera was there when the plaintiff was in" the bathroom.  Without Martinez's testimony, the trial court added, the video recordings in which the Arendt plaintiffs did not appear are "[t]he only evidence available . . . as to the placement of the device and the time frame."  The court found that to permit the case to proceed on that basis would "encourag[e] speculation, at best."

The court concluded that plaintiffs had raised "no genuine issue of material facts in dispute" because "the women who were not on the tapes therefore had no factual support for their claims."  In response to plaintiffs' argument that summary judgment would be premature, the court underscored that "the case is three years old.  The day of reckoning has come.  If in fact they come up with new evidence, well they can always make another application to the [c]ourt."

13

The court lamented the lack of evidence during oral argument on the summary judgment motion: "there's no affidavits or certifications from anybody." At one point, plaintiffs' counsel said he could submit affidavits from plaintiffs -- "Now, Judge, if you would like us to develop a factual record and get affidavits from every one of these 35 women that, yes, I used the bathroom on the third floor or -- and/or the fifth floor every day that I was at work . . ." -- but counsel added, "I think it's . . . kind of a pointless exercise." No submissions along those lines were made, and the court, in its decision, noted, "I don't have any certifications from any of the" Arendt plaintiffs.

The trial court denied the Arendt plaintiffs' motion for reconsideration but reinstated the claims of three plaintiffs who identified themselves on the recovered footage. The trial court explained that "[i]t has never been established when the cameras were there or for how long, and there has been no admission as to where they were located."

The trial court also rejected the Arendt plaintiffs' renewed argument that summary judgment was premature because discovery was still outstanding. The court noted the Arendt plaintiffs had made "no submission as to how any outstanding discovery would help [them] establish the timeframe in which these cameras were in place."

14

The Friedman plaintiffs proceeded with their case against all defendants until February 10, 2016, when the trial court granted summary judgment in favor of CRS and partial summary judgment in favor of the owner-managers.[2] Weeks later, during jury selection, the Friedman plaintiffs settled with the remaining defendants.

With all of the issues in the case resolved at the trial court level, the Arendt plaintiffs filed a notice of appeal in July 2016. They challenged the trial court's summary judgment order from January 2014, when their claims were dismissed. The owner-managers, in turn, filed a cross-appeal to challenge the trial court's partial denial of their motion for summary judgment. In support of their cross-appeal, the owner-managers submitted materials in July 2016 that had not been produced before the 2014 dismissal of the Arendt plaintiffs, including, as noted earlier, the summary of Detective Taylor's interview with Martinez and the transcript of Detective Taylor's deposition.

C.

The Appellate Division reversed the trial court's grant of summary judgment. Friedman v. Martinez, 454 N.J. Super. 87, 90, 94 (App. Div. 2018).

_____

[2] Specifically, the court (1) granted summary judgment in favor of the owner-managers as to the Friedman plaintiffs' vicarious liability and punitive damages claims; (2) denied the owner-managers' motion for summary judgment as to negligence and premises liability; and (3) denied the Planned defendants' motion for summary judgment as to negligence.

15

The court held that plaintiffs can maintain a cause of action for intrusion upon seclusion without proof "their images were actually captured" in a recording. Ibid. Although the absence of direct evidence may affect a victim's claim for damages, the court noted, it is possible to prove an invasion of privacy through circumstantial evidence. Id. at 94-95.

Here, the Appellate Division observed that "a reasonable inference must arise in favor of . . . plaintiffs who were unable to" identify themselves from a recorded image if a plaintiff

> could assert her use of the facilities during the same general time frame other plaintiffs were spied upon. For example, the record supports an assumption for summary judgment purposes that the janitor's illicit actions occurred between six months to a year before his conduct was discovered.[3] Any plaintiff who could assert she used the same restroom around the same time should not have been dismissed by way of summary judgment. Moreover, such a plaintiff need not specifically delineate the dates on which she used the infringed facility. It would suffice if a plaintiff could demonstrate she worked in the building in an area close enough to allow a factfinder to assume her occasional use of the surveilled restroom.
>
> [Id. at 95.]

_____

[3] For this estimate, the Appellate Division relied on Detective Taylor's deposition. See id. at 91 n.1. The owner-managers contend it was error to rely on the deposition because it was taken after partial summary judgment was granted in 2014.

16

In the Appellate Division's view, the trial court "failed to give plaintiffs the benefit of reasonable inferences arising from other evidence" and "took a far more restrictive view of plaintiffs' proofs than" the summary judgment standard permits. Ibid. The court therefore reversed and remanded for further proceedings. Id. at 95-96.

In so ruling, the Appellate Division apparently read the trial court's remarks in a more restrictive way than we do. To be sure, some of the judge's oral comments suggested plaintiffs could not establish a claim without video evidence. Viewed in context, however, the trial judge concluded that more evidence of some sort was required to prove the presence of a camera, not that a recorded image was needed for the claim to proceed.

The Appellate Division declined to reach the owner-managers' cross-appeal. Id. at 96-97.

We granted petitions for certification by the owner-managers, 236 N.J. 244 (2019), and the Planned defendants, 238 N.J. 62 (2019). We also granted the American Civil Liberties Union of New Jersey (ACLU) leave to appear as amicus curiae.

To be clear, the only parties to this appeal are the Arendt plaintiffs, the owner-managers, and the Planned defendants. Although the owner-managers

17

cross-appealed from a 2016 decision that involved the Friedman plaintiffs, those plaintiffs are not part of this case.[4]

## II.

The owner-managers argue that the Appellate Division "upended the levels of proof that plaintiffs must satisfy to bring tort claims arising from alleged privacy invasions." They contend the court's ruling allows plaintiffs to pursue such claims "without any evidence that they suffered a privacy invasion." The owner-managers maintain the Appellate Division allowed plaintiffs to rely on inferences to speculate they might have been harmed. The "mere possibility of privacy invasion," the owner-managers submit, is insufficient as a matter of law.

The owner-managers also claim the Appellate Division improperly relied on materials that were not part of the 2014 summary judgment record. Finally, they contend the Appellate Division should have addressed their cross-appeal. The Planned defendants joined in those arguments.

The Arendt plaintiffs counter that defendants "seek to create a new and more stringent standard of proof" that would require all plaintiffs to prove

---

[4] Proceedings related to the Arendt plaintiffs continued in the trial court after the Appellate Division remanded the matter. Those proceedings have no bearing here for reasons we discuss later.

18

invasion-of-privacy claims solely through direct evidence. The Arendt plaintiffs argue the Appellate Division rightly rejected that proposition.

Plaintiffs insist there was sufficient evidence for the case to proceed without proof that their images had been identified on a video recording. They contend that summary judgment was not appropriate because video surveillance occurred on numerous days, through several seasons of the year, while women who worked at the building "could be reasonably expected to use the restrooms at least once a day." Plaintiffs add that some video devices and recordings were not recovered. Plaintiffs also stress that the placement of the device itself, not its use, established an intentional intrusion on seclusion.

The ACLU argues that individuals have a constitutional privacy interest that is enforced through the common law; that the mere placement of a surreptitious camera in a bathroom violates that privacy interest; and that plaintiffs should not be required to provide direct evidence that they were recorded to survive summary judgment.

### III.

We first consider the right to privacy and then analyze what evidence is needed to establish that it has been violated.

19

A.

Article I, Paragraph 1 of the State Constitution declares that "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which are . . . enjoying and defending life and liberty, . . . and . . . pursuing and obtaining safety and happiness." N.J. Const. art. I, ¶ 1. That declaration "encompasses the right of privacy." Doe v. Poritz, 142 N.J. 1, 89 (1995).

In this appeal, plaintiffs' claims are grounded in the common law right to privacy. That right can be traced to a seminal law review article published in 1890 and written by Samuel Warren and Louis Brandeis, the future Associate Justice of the Supreme Court. They argued that the time had come for the common law to develop further and "secur[e] . . . the right 'to be let alone.'" Samuel D. Warren & Louis D. Brandeis, The Right to Privacy, 4 Harvard L. Rev. 193, 195 (1890) (quoting Cooley on Torts 29 (2d ed. 1988)). As they wrote more than a century ago, "[r]ecent inventions and business methods" including "[i]nstantaneous photographs," the "newspaper enterprise," and "numerous mechanical devices" begged "the question whether our law will recognize and protect the right to privacy." Id. at 195-96.

By 1960, most courts had recognized a cause of action for invasion of privacy. William L. Prosser, Privacy, 48 Cal. L. Rev. 383, 386 (1960). The

20

noted legal scholar Dean William Prosser outlined four separate torts that comprised the right to privacy: (1) "[i]ntrusion upon the plaintiff's seclusion or solitude, or into his private affairs"; (2) "[p]ublic disclosure of embarrassing private facts"; (3) "[p]ublicity which places the plaintiff in a false light in the public eye"; and (4) "[a]ppropriation, for the defendant's advantage, of the plaintiff's name or likeness." Id. at 389. Examples of the first category included "intruding into [a] home," "an illegal search," "eavesdropping upon private conversations by means of wire tapping and microphones," "peering into the windows of a home," and "unauthorized prying into" private effects or information. Id. at 389-90.

Dean Prosser later served as the chief reporter for the Restatement (Second) of Torts, which incorporated the tort of intrusion upon seclusion at section 652B. Eli A. Meltz, Note, No Harm, No Foul? "Attempted" Invasion of Privacy and the Tort of Intrusion Upon Seclusion, 83 Fordham L. Rev. 3431, 3436 (2015).

In Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81, 94-95 (1992), and Stengart v. Loving Care Agency, Inc., 201 N.J. 300, 316 (2010), this Court adopted section 652B, which provides that

> [o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to

21

the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

[Restatement (Second) of Torts § 652B.]

Comment (b) to section 652B helps explain the contours of the tort and is particularly relevant here:

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.
>
> [Id. § 652B cmt. b.]

As the comment makes clear, a person's privacy can be invaded without a camera (a "mechanical aid"), and publication or use of an image are not necessary components of the tort. Ibid. Neither the Restatement nor the comment require a recording for an invasion of privacy to occur. See, e.g., id. § 652B cmt. b, illus. 3. In other words, the Restatement does not suggest a

22

plaintiff must show that someone saw or heard recorded information to be able to bring a claim for intrusion on seclusion.

B.

Before this case, no reported decision in New Jersey had squarely addressed whether simply placing a recording device in a private space was enough to establish an invasion of privacy without proof of an actual recording. The Arendt plaintiffs rely on Soliman and Villanova v. Innovative Investigations, Inc., 420 N.J. Super. 353 (App. Div. 2011), which involved different circumstances.

In Soliman, the defendants admitted that concealed cameras monitored certain bathrooms for three days, and a plaintiff certified she used the bathroom several times a day, see 433 N.J. Super. at 159-60, 164 -- in contrast to the uncertain timing and placement of the cameras in this case. The parties disputed which part of the bathroom the cameras observed. Id. at 171. The Soliman court properly concluded the plaintiffs could survive a motion for summary judgment although it was unclear precisely what the cameras viewed. Id. at 170-72.

Villanova found no invasion of privacy when a spouse placed a GPS device on a family car because there was no evidence the device tracked her

23

husband to a private or secluded area. 420 N.J. Super. at 356, 361. Thus, neither case directly answers the question raised in this appeal.

Courts in other jurisdictions have held that no evidence of an actual viewing or recording is needed to establish an invasion of privacy. See Kohler v. City of Wapakoneta, 381 F. Supp. 2d 692, 703-04 (N.D. Ohio 2005) (placement of a tape recorder in a women's bathroom stall was enough to establish a claim of intrusion, even if the device did not capture "personal noises," because an "invasion consists solely of an intentional interference with [a] person's interest in solitude" (internal quotation omitted)); Amati v. City of Woodstock, 829 F. Supp. 998, 1000-01, 1009-11 (N.D. Ill. 1993) (alleged recording of phone conversations sufficiently stated a privacy claim regardless of whether anyone actually overheard any conversations); Hernandez v. Hillsides, Inc., 211 P.3d 1063, 1077-78 (Cal. 2009) (plaintiffs did not need to show they were recorded or viewed by a hidden video camera in the workplace to establish an intrusion); Koeppel v. Speirs, 808 N.W.2d 177, 178, 184-85 (Iowa 2011) (privacy tort protects against the placement of a functional surveillance device in a bathroom, without requiring proof that someone accessed the private information); New Summit Assocs. Ltd. P'ship v. Nistle, 533 A.2d 1350, 1354 (Md. Ct. Spec. App. 1987) ("To establish an invasion of her privacy, appellee was not required to prove that a particular

24

individual actually observed her while she used the facilities in her bathroom. The intentional act that exposed that private place intruded upon appellee's seclusion."); Hamberger v. Eastman, 206 A.2d 239, 242 (N.H. 1964) (landlord's alleged bugging of a bedroom, even though there was "no allegation[] that anyone listened or overheard any sounds or voices originating from the plaintiffs' bedroom," sufficiently stated a claim).

Some courts have noted that the absence of direct proof of a recording or an actual viewing could affect a damages award but not a party's ability to state a claim. See Carter v. Innisfree Hotel, Inc., 661 So. 2d 1174, 1179 (Ala. 1995) (hotel patrons need not demonstrate someone actually peered through peep holes scratched into a mirror in their room, "[a]lthough the absence of proof that anyone used the scratches for spying may be relevant to the question of the amount of damages to which the [plaintiffs] would be entitled"); Harkey v. Abate, 346 N.W.2d 74, 75-76 (Mich. Ct. App. 1983) (installation of see-through panels in the ceiling of a women's bathroom at a roller rink can constitute an interference with privacy; absence of proof that a device was used "is relevant to the question of damages" but "not fatal to plaintiff's case").

Other jurisdictions require more than the presence of an eavesdropping device or a pathway to see into a private space. To state a cause of action for

invasion of privacy, those courts require some showing that a defendant actually saw or heard private activities. See Moffett v. Gene B. Glick Co., Inc., 621 F. Supp. 244, 256, 284 (N.D. Ind. 1985) (discovery of an intercom hidden in an office kitchen did not establish an invasion of privacy; although the "intercom may have made it possible to overhear a conversation, no intrusion would have occurred until something was actually overheard"); LeCrone v. Ohio Bell Tel. Co., 201 N.E.2d 533, 535-36, 538 (Ohio Ct. App. 1963) (plaintiff presented a prima facie case of invasion of privacy with evidence that her estranged husband arranged for an extension on her private phone line to be placed at his home, coupled with sufficient proofs to find "that conversations were in fact intercepted"); Marks v. Bell Tel. Co. of Pa., 331 A.2d 424, 431 (Pa. 1975) (although private conversations were recorded, no invasion of privacy was established because there was no proof that anyone listened to them); see also Johnson v. Allen, 613 S.E.2d 657, 659-61 (Ga. Ct. App. 2005) (plaintiffs' claim for intrusion upon seclusion based on the installation of a surveillance camera in a women's restroom was properly allowed to proceed; in addition to the presence of the camera, there was "sufficient evidence to raise a reasonable inference that [the defendant] used the camera to improperly monitor the . . . restroom").

## C.

We agree with the Appellate Division and the courts in many other jurisdictions that have concluded a victim does not have to present evidence that she was secretly recorded to bring a cause of action for intrusion on seclusion. See Friedman, 454 N.J. Super. at 94. The tort is tied to the placement of a surveillance device in an area reasonably expected to be private. See Koeppel, 808 N.W.2d at 184-85. It is the intrusion itself, and not an actual viewing, that is critical. And that intrusion takes place when a victim uses a private space where a spying device has been concealed; it does not depend on when -- or whether -- direct evidence of actual spying is found.

Imagine a secret camera in a bedroom used by a married couple. Someone who hides a recording device there intrudes on and disrupts their privacy, even if the couple cannot locate any video evidence. See Amati, 829 F. Supp. at 1010 n.22. The harm occurs when the electronic invasion of privacy takes place, so long as "the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B. Otherwise, an intruder who could disable a device or erase a recording afterward would be afforded more protection than a victim who suffered mental anguish because her privacy was invaded. See Koeppel, 808 N.W.2d at 184. Also, as the

27

ACLU aptly points out, with livestreaming of images today, there is often no physical recording to be found.

Learning that one has been viewed in a private moment, because of the intentional efforts of another, under circumstances that would be highly offensive to a reasonable person, satisfies the tort's elements and purpose. See Restatement (Second) of Torts § 652B; see also Prosser, 48 Cal. L. Rev. at 392 ("[T]he interest protected by this branch of the tort is primarily a mental one."). The absence of a recording can go to the issue of damages. See Carter, 661 So. 2d at 1179; Harkey, 346 N.W.2d at 75-76.

To establish that an intrusion occurred, a victim may rely on circumstantial evidence, and courts can draw reasonable inferences from the proofs presented. See, e.g., Carter, 661 So. 2d at 1179 (there was "no need for the [plaintiffs] to establish that they saw another's eyes peering back at them through their mirror" in light of reasonable inferences that could be drawn from the evidence); accord Koeppel, 808 N.W.2d at 178, 184-85; Nistle, 533 A.2d at 1353-54. Even courts that examined whether private activities were actually viewed or overheard have relied on circumstantial evidence. See Johnson, 613 S.E.2d at 661; LeCrone, 201 N.E.2d at 538.

To recover in a case like this, a victim would need to show that she used an area reasonably expected to be private, like a restroom or locker room,

28

while a recording device was concealed there.  See Friedman, 454 N.J. Super. at 94.  A court could reasonably infer that someone who worked in the vicinity of a bathroom around the same time a camera was hidden there met that standard.  Id. at 95.  And a person who visited a building only once could also satisfy the test with proof that she used a bathroom at the same time a camera was there.

IV.

A.

We turn now to the summary judgment motion defendants filed in 2014. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995). To decide whether a genuine issue of material fact exists, the trial court must "draw[] all legitimate inferences from the facts in favor of the non-moving party."  Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016).  Accordingly, the trial court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party,

29

are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540.

A key aim "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment should be granted, in particular, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

The rule is not meant to "shut a deserving litigant from his [or her] trial." Brill, 142 N.J. at 540 (alteration in original) (quoting Judson v. Peoples Bank & Tr. Co., 17 N.J. 67, 77 (1954)). It is "'inappropriate' to grant summary judgment when discovery is incomplete and 'critical facts are peculiarly within the moving party's knowledge.'" James v. Bessemer Processing Co., 155 N.J. 279, 311 (1998) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193 (1988)). By contrast, a motion for summary judgment can be approved when the party opposing the application is in control of the information sought. See Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 451 (2007). "[S]ummary judgment is not premature merely because discovery has not been completed, unless" the non-

moving party can show "'with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action.'" Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)).

B.

We apply that standard to the summary judgment record the parties presented to the trial court in 2014. An employee discovered a camera in a women's restroom, and video footage from a camera in the women's locker room was also recovered. It is beyond dispute that the cameras were located in inherently private places where women had a reasonable expectation of privacy.

Aside from those facts, however, the state of the record presents a number of challenges. Counsel for the owner-managers estimated at oral argument in 2013 that there are fifteen women's restrooms in the building, three on each floor. The ING employee found a camera in a third-floor restroom.

According to the record presented by the owner-managers in their cross-appeal from the 2016 summary judgment decision, women who identified themselves on video footage used restrooms on the third, fourth, and fifth floors, as well as the bathroom near the women's locker room on the first

31

floor.  The police, however, were not able to identify which specific bathrooms Martinez filmed or when he did so.

At the time of the 2014 motion, the record revealed that a camera had been found in the third-floor bathroom -- one of several cameras overall. Excerpts from some of the plaintiffs' depositions mentioned other items that were or might have been cameras, which had been thrown out without having been reported or investigated.  There was little in the 2014 record about the time period during which the filming took place, other than that it spanned different seasons of the year based on the type of women's clothing depicted in the videos.

In a deposition taken on April 16, 2014, after the summary judgment motion, Detective Taylor said that Martinez admitted filming for a period of six months to a year, and that four cameras were recovered.  The detective could not say whether Martinez had filmed multiple bathrooms at the same time, or when he moved cameras from one restroom to another.  To complicate matters further, Martinez admitted that he erased some of the images after viewing them.

The Arendt plaintiffs were not captured on the existing video footage. Plaintiffs' sixth amended complaint alleges generally that "[o]n multiple and numerous occasions up to and including November 23, 2009, plaintiffs were

32

subjected to covert and unwanted photographing, filming, videotaping and/or other forms of recording by means of hidden devices while using the women's restroom at their place of employment at 400 Atrium Drive."

To be clear, it was not necessary for plaintiffs to offer video footage of themselves to survive summary judgment. And as the non-moving party, the Arendt plaintiffs are entitled to all reasonable inferences in their favor. That said, the evidence falls short of demonstrating facts within their control: that they used bathrooms with cameras during the relevant time period.

In 2013, counsel suggested he could present affidavits from each of the more than thirty plaintiffs along these lines: "I used the bathroom on the third floor or -- and/or the fifth floor every day that I was at work." But no such affidavits or certifications were presented, and none appeared in the record in 2014, as counsel conceded at oral argument. The record at the time does not reveal where or when the Arendt plaintiffs worked in the office building, which restrooms they used, or the particular restrooms the Friedman plaintiffs used, which could have helped identify where cameras had been placed.[5]

---

[5] We do not suggest that, in cases like this, plaintiffs have to view videos of other victims to gather sufficient evidence to vault the summary judgment standard. Each case is fact-sensitive, and when other evidence is available, it is best to avoid re-victimizing victims by having others view invasive videos of them.

Nearly three years after the filing of the initial complaint, despite a motion for summary judgment and extensive argument about the state of the record, the Arendt plaintiffs had not offered proof from which one could reasonably infer that they used a restroom while a camera was placed there. And the court could not reasonably infer from the record that cameras had been placed in all fifteen bathrooms. It was therefore not possible for the trial court to find that plaintiffs had satisfied their burden by a preponderance of the evidence at the summary judgment stage.

It does not appear that the trial judge interpreted the tort's elements so differently from the Appellate Division that a remand is appropriate. Plaintiffs had an opportunity to present proofs to the trial court before the judge ruled in 2014. And all parties are entitled to have their case decided on the basis of the record before the trial court at the time summary judgment is decided. We respectfully will not consider representations at oral argument about evidence developed later on remand. See Scott v. Salerno, 297 N.J. Super. 437, 447 (App. Div. 1997) ("[A]ppellate review is confined to the record made in the trial court, and appellate courts will not consider evidence submitted on appeal that was not in the record before the trial court." (citation omitted)). In light of the nature of the record in 2014, we cannot say the trial court erred by granting summary judgment.

Nor can we find that summary judgment was premature here. Counsel for plaintiffs bases that argument on materials sought from the prosecutor's files. But counsel has not shown that any outstanding "discovery [would] supply the missing elements of the cause of action." Badiali, 220 N.J. at 555 (quoting Wellington, 359 N.J. Super. at 496). Not only is there no particular explanation about what the files would likely reveal, but Detective Taylor's deposition after the summary judgment motion suggests they might reveal very little. He testified the police did not uncover the precise location or timeframe of the filming and stopped trying to identify victims from the footage after identifying about fifteen women. In conducting a criminal investigation, the police understandably did not have precisely the same objective as later civil litigants. In any event, without some showing of how the requested materials could help the Arendt plaintiffs state a prima facie claim of intrusion, it was not premature to grant summary judgment after three years of discovery.

We therefore reinstate the trial court's order. As a result, we need not reach the issues in defendant's cross-appeal.[6]

---

[6] The Appellate Division noted that it did "not address plaintiffs' other pleaded causes of action because the motion judge also gave them no consideration in dismissing [plaintiffs'] claims." Friedman, 454 N.J. Super. at 95 n.6. On direct appeal, plaintiffs did not advance arguments independent of the intrusion claim for other counts in the complaint. Like the Appellate Division, we therefore do not consider those other counts and do not remand for further review.

## V.

For the reasons stated above, we reverse the judgment of the Appellate Division and reinstate the trial court's order granting summary judgment.


JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.